UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN A. HIRSCH AND RONALD W. ZOLLA,<br>Individually and as officers, directors, and<br>shareholders of ZHL, Inc. and ZHL, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL LAMENSDORF and<br>KATHY LAMENSDORF, Individually and<br>as shareholders of ZHL, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action<br>No. 05-10902-DPW |

**PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES PURSUANT TO 28 U.S.C. § 1447**

The plaintiffs in this matter herewith move pursuant to 28 U.S.C. § 1447(c) for an award of reasonable attorneys fees and costs incurred as a result of the removal of the Amended Complaint in this matter to this Court. In support of their motion, the plaintiffs state:

1. It is well accepted that § 1447(c) is intended to provide reimbursement to plaintiffs who have incurred expense in securing the remand of their cases to state court. See, e.g., Pran v. Waste Management, Inc., 290 F. Supp. 2d 1286, 1295 (M.D. Fla. 2003).

2. Here, the plaintiffs have concurrently moved to remand. As described in the Affidavit of John Hirsch, submitted concurrently herewith, ZHL's principal place of business in Florida. It is therefore non-diverse as to the defendants, who are Florida residents. The Lamensdorfs know that ZHL's principal place of business is in Florida.

The only asset of substance that ZHL owns, or ever has owned, is an ambulatory surgery center ("ASC") in Sarasota, Florida. The ASC was built for Dr. Lamensdorf to perform surgeries. See Hirsch Aff. at ¶ 3.

3.    Significantly, the Lamensdorfs do not provide any principled discussion in their submissions to this Court about ZHL's lack of diversity. Rather, both the Lamensdorfs' Notice of Removal and their Memorandum of Law in Support of Notice of Removal simply ignore ZHL altogether. They do so even though the Amended Complaint that was served upon them explicitly names ZHL as a party plaintiff. See Proof of Service, which is part of the record in the Massachusetts case, a true and accurate copy of which is attached for the Court's convenience as Exhibit A.

4.    Furthermore, to the extent that the Lamensdorfs were simply inexcusably sloppy in ignoring ZHL in their original pleadings, they were aware no later than May 11, 2005 that ZHL was a party to the Complaint. At that time, they filed an amended Civil Action Cover Sheet listing ZHL as a party. See Exhibit B hereto. To this date, however, the Lamensdorfs have not amended their Notice of Removal, have not amended their Memorandum of Law, and have not offered any explanation why they take the position that they are diverse as to ZHL. Indeed, a state court action which they filed only a month or so ago makes clear that they agree that ZHL's business operations are concentrated in Florida. See Exhibit C hereto. Accordingly, while bad faith is not a necessary predicate to an award of fees under § 1447 (c), bad faith clearly exists here.

5.    In further support of this motion, the plaintiffs submit their "Consolidated Memorandum of Law in Support of (i) Motion to Remand and (ii) Motion for Attorneys Fees Pursuant to 28 U.S.C. § 1446."

2

6.    The signature of the attorney on this pleading constitutes a sworn averment that the documents attached hereto are true and accurate copies of what they purport to be on their face.

WHEREFORE, the plaintiffs respectfully submit that this Honorable Court:

A.    Award them their attorneys fees and costs pursuant to 28 U.S.C. § 1447(c); and

B.    Grant the plaintiffs leave to submit affidavits detailing the attorneys' fees incurred in securing remand to the Massachusetts Superior Court;

C.    Grant whatever other or additional relief this Honorable Court deems just under the circumstances.

Respectfully submitted,

JOHN A. HIRSCH, RONALD W. ZOLLA, and ZHL, INC.

By their Attorneys,

_/S/____Edward Foye_____
J. Owen Todd (BBO # 499480)
Edward Foye (BBO #562375)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA  02109
Dated:  May 23, 2005                    617-720-2626

### Certificate of Compliance with L.R. 7.1

I, Edward Foye, state that I spoke with Matthew Miller, attorney for the defendants, about the matters raised in the foregoing motion on May 13, 2005.

__/S/___Edward Foye_____

JE SERVED

| | RECEIPT NO. |
| --- | --- |
| | 0402318B |
| | CASE NO. |

1428 S TAMIAMI TR SARASOTA

**ADDRESS**

JOHN A HIRSCH & RONALD W ZOLLA ETC ET AL        OOS   LC

**PLAINTIFF – PETITIONER**

MICHAEL LAMENSDORF & KATHY LAMENSDORF ETC ET AL

| | COURT DATE |
| --- | --- |
| | SUPERIOR/ESS |

**DEFENDANT – RESPONDENT**

| | COURT |

SUMMONS/AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

**TYPE OF WRIT**

```
EDWARD FOYE ESQ
TODD & WELD LLP
28 STATE ST
BOSTON, MA  02109
```

**PLAINTIFF / ATTORNEY**

Received this writ on the _____ 7 TH _____ day of _____ APRIL _____, 20~~20~~05 and served the same at _____ 0 _____ 11:40 A M on the _____ 11 th _____ day of _____ April _____, 20 05 in _____ SARASOTA _____ County, Florida as follows:

__ **INDIVIDUAL**
By delivering a true copy of this writ together with a copy of the initial pleadings, if any, with the date and hour of service endorsed thereon by me to: (Person Served)
_____

__ **SUBSTITUTE**
By delivering a true copy of this writ together with a copy of the initial pleadings, if any, with the date and hour of service endorsed thereon by me
    __ to the defendant's spouse to – wit: _Kathy, wife_ _____
    __ at the defendant's usual place of abode with a person residing therein who is 15 years of age, or older, to – wit: _____
    and informing said person of their contents.

__ **CORPORATE**
By delivering a true copy of this writ together with a copy of the initial pleadings, if any, with the date and hour of service endorsed thereon by me
    __ To: _____ as _____
    of _____ in the absence of any higher ranking officer as defined in Florida Statute 48.081 (1).
    __ To: _____ as registered agent of_____
    according to Florida Statute 48.081 (3).
    __ To: _____, as an employee of the within named corporation at said corporation's place of business because service could not be made on the registered agent for failure to comply with Chapter 48.091, thereby complying with Chapter 48.081 (3), Florida Statutes.

__ **POSTED RESIDENTIAL**
By attaching a true copy of this writ with the date and hour of service endorsed thereon by me together with a copy of the complaint or petition, to a conspicuous place on the property described within after making two (2) attempts not less than six (6) hours apart in that the tenant could not be found and there was no person residing therein, fifteen (15) years of age or older whom service could be made, after the provisions as set forth in Chapter 48.183 (1), Florida Statutes have been met.

__ **NOT FOUND**
By returning said writ unserved for the reason that after due diligence to locate the named person could not be found in Sarasota County, Florida.

__ **OTHER**

_Betty Freddes_  4/11/05

OFFICIAL NOTARY SEAL
BETTY FREDDES
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. DD140943
MY COMMISSION EXP. AUG. 25,2008

WILLIAM F. BALKWILL   SHERIFF
SARASOTA   COUNTY, FLORIDA

SERVICE COST: _____ $ 35.00 _____        BY _____

**COURT COPY**        Deputy Sheriff

1428 S TAMIAMI TR SARASOTA

JOHN A HIRSCH & RONALD W ZOLLA ETC ET AL          OOS   LC

MICHAEL LAMENSDORF & KATHY LAMENSDORF ETC ET AL

SUMMONS/AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

| | |
|---|---|
| ¡ SERVED | RECEIPT NO |
| | 0402318B |
| | CASE NO |

ADDRESS

PLAINTIFF – PETITIONER

| COURT DATE |
|---|
| SUPERIOR/ESS |

DEFENDANT – RESPONDENT

| COURT |

TYPE OF WRIT

```
EDWARD FOYE ESQ
TODD & WELD LLP
28 STATE ST
BOSTON, MA  02109
```

PLAINTIFF / ATTORNEY

Received this writ on the _____ 7 TH _____ day of _____ APRIL _____ 20 05 and served the same at 1 _____ 11:40 A M on the _____ 11th _____ day of _____ April _____, 20 05 in SARASOTA _____ County, Florida as follows:

**INDIVIDUAL**
By delivering a true copy of this writ together with a copy of the initial pleadings, if any, with the date and hour of service endorsed thereon by me to: (Person Served)
Kathy Lamensdorf _____ .

__ **SUBSTITUTE**
By delivering a true copy of this writ together with a copy of the initial pleadings, if any, with the date and hour of service endorsed thereon by me
__ to the defendant's spouse to – wit: _____
__ at the defendant's usual place of abode with a person residing therein who is 15 years of age, or older, to – wit: _____
and informing said person of their contents.

__ **CORPORATE**
By delivering a true copy of this writ together with a copy of the initial pleadings, if any, with the date and hour of service endorsed thereon by me
__ To: _____ as _____
of _____ in the absence of any higher ranking officer as defined in Florida Statute 48.081 (1).
__ To: _____ as registered agent of_____
according to Florida Statute 48.081 (3).
__ To:_____ , as an employee of the within named corporation at said corporation's place of business because service could not be made on the registered agent for failure to comply with Chapter 48.091, thereby complying with Chapter 48.081 (3), Florida Statutes.

__ **POSTED RESIDENTIAL**
By attaching a true copy of this writ with the date and hour of service endorsed thereon by me together with a copy of the complaint or petition, to a conspicuous place on the property described within after making two (2) attempts not less than six (6) hours apart in that the tenant could not be found and there was no person residing therein, fifteen (15) years of age or older whom service could be made, after the provisions as set forth in Chapter 48.183 (1), Florida Statutes have been met.

__ **NOT FOUND**
By returning said writ unserved for the reason that after due diligence to locate the named person could not be found in Sarasota County, Florida.

__ **OTHER**

Betty Freddes   4/11/05

OFFICIAL NOTARY SEAL
BETTY FREDDES
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. DD140943
MY COMMISSION EXP. AUG. 25,2006

WILLIAM F. BALKWILL   SHERIFF
SARASOTA   COUNTY, FLORIDA

SERVICE COST: _____ $ 35.00 _____

BY: _____

COURT COPY   Deputy Sheriff

# FOLEY HOAG LLP

ATTORNEYS AT LAW

RECEIVED
MAY 1 2 2005

Matthew E. Miller
Boston Office
617) 832-3041
mmiller@foleyhoag.com

May 11, 2004

**By U.S. Mail**

Clerk's Office
United States District Court for the District of Massachusetts
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

    Re:    <u>Hirsch. et al. v. Lamensdorf et al., Civ. A. No. 05-10902-DPW</u>

Dear Sir/Madam:

    I represent defendants Dr. Michael Lamensdorf and Kathy Lamensdorf in the above-referenced matter. The Civil Cover Sheet which was filed on May 2, 2005, with the Notice of Removal of this case from Massachusetts Superior Court, Essex County, inadvertently failed to list ZHL, Inc., a Massachusetts corporation, as a party plaintiff in this case. Plaintiff ZHL, Inc. is represented by J. Owen Todd and Edward Foye of the firm Todd & Weld, 28 State Street, Boston, MA, 02109, the same attorneys also representing the other plaintiffs in this case, John A. Hirsch and Ronald W. Zolla.

    Thank you for your attention to this matter.

               Yours very truly,

               Matthew E. Miller

MEM

cc:    Edward Foye, Esq.
       Michael Taaffe, Esq.

B3034071 1

IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA

DR. MICHAEL LAMENSDORF, in his capacity
as shareholder of ZHL, INC., a Massachusetts
corporation, and KATHY LAMENSDORF,
in her capacity as shareholder of ZHL, INC.,

      Plaintiffs,

v.                                                          CASE NO.: *2005 CA 2997 NC*

ZHL, INC., a Massachusetts corporation,
RONALD W. ZOLLA, in his capacity as
shareholder of ZHL, INC., JOHN A. HIRSCH,
in his capacity as shareholder of ZHL, INC.,
and GLOBAL SURGICAL PARTNERS, INC.,
a Florida corporation,

      Defendants.

_____/

## COMPLAINT

COME NOW, Plaintiffs, Dr. Michael Lamensdorf, in his capacity as shareholder of ZHL,

Inc., and Kathy Lamensdorf, in her capacity as shareholder of ZHL, Inc. (hereafter collectively

referred to as the "Lamensdorfs" or the "Plaintiffs"), by and through their undersigned counsel,

and hereby sue Defendants, ZHL, Inc., a Massachusetts corporation, Ronald W. Zolla, in his

capacity as shareholder of ZHL, Inc., John A. Hirsch, in his capacity as shareholder of ZHL, Inc.,

and Global Surgical Partners, Inc., a Florida corporation, and allege as follows:

### JURISDICTIONAL ALLEGATIONS

1.     This is an action in equity in which Plaintiffs seek relief from this Court for: (i)

injunctive relief; (ii) the appointment of a receiver to preserve the value of property located

within Sarasota County; and (iii) the imposition of a constructive trust.

2.      Plaintiff, Dr. Michael Lamensdorf, is a resident of Sarasota County, Florida and a practicing ophthalmologist whose professional address is 1428 South Tamiami Trail, Sarasota, Florida 34239.

3.      Plaintiff, Kathy Lamensdorf, is a resident of Sarasota County, Florida.

4.      Defendant, ZHL, Inc. ("ZHL"), is a Massachusetts corporation authorized to conduct business in the State of Florida. ZHL is registered with the Florida Department of State, Division of Corporations, and its registered agent authorized to accept service of process is William Hirsch, CPA.

5.      William Hirsch, CPA's professional address is listed with the Florida Department of State, Division of Corporations, as 608 West Horatio Street, Tampa, FL 33606.

6.      Defendant, Ronald W. Zolla ("Zolla"), is a resident of the State of Massachusetts and resides at 20 Schooner Ridge, Marblehead, Essex County, Massachusetts 01945.

7.      Defendant, John A. Hirsch ("Hirsch"), is a resident of the State of Massachusetts and resides at 15 Brookside Road, Topsfield, Essex County, Massachusetts 01983.

8.      Defendant, Global Surgical Partners, Inc. ("GSP"), is a duly licensed Florida corporation authorized to conduct business in the State of Florida. GSP's principal address is listed with the Florida Department of State, Division of Corporations, as 3059 Grand Avenue, Suite 300, Miami, Florida 33133.

9.      GSP's registered agent is Ziskind & Arvin, P.A., located at 3059 Grand Avenue, Suite 300, Miami, Florida 33133.

10.     All conditions precedent to the maintenance of this action, if any, have been performed and/or waived.

11.     This Court has jurisdiction of this matter pursuant to Sections 26.012(2)(e) and 26.012(3), Florida Statutes.

12.     Venue is proper in Sarasota County since the property Plaintiffs are seeking to protect is located in Sarasota County, Florida.

## GENERAL ALLEGATIONS

13.     Dr. Lamensdorf is a board-certified, fellowship trained ophthalmologist.

14.     Dr. Lamensdorf has dedicated his professional life to helping people achieve their best possible vision by providing them with the latest in eyecare technology.  As a practicing ophthalmologist, he specializes in cataract surgery and the eyecare needs unique to seniors.  He developed Rapid Recovery Cataract Surgery, an advanced, no-stitch procedure that allows patients to resume life's normal activities almost immediately following surgery.

15.     In addition to his medical practice, Dr. Lamensdorf remains very active in the local Sarasota community and has founded several service and charitable organizations.

16.     As a board-certified ophthalmologist, Dr. Lamensdorf also maintains memberships and affiliations with: (i) Phi Beta Kappa; (ii) the American Academy of Ophthalmology; (iii) American College of Surgeons; (iv) American Society of Cataract and Retractive Surgery; (v) American Society of Ophthalmic Administrators; (vi) Sarasota County Medical Society; (vii) Sarasota Memorial Hospital; and (viii) the Doctor's Hospital.

17.     In addition, Dr. Lamensdorf maintains an affiliation with the Lantz Eye Surgery Center ("LESC").

18.     The Lantz Eye Surgery Center is an ambulatory eye surgery center located at 2821 Proctor Road, Sarasota, Florida 34231.

The Creation of the Lantz Eye Surgery Center ("LESC")

19.    Dr. Lamensdorf practices medicine and performs ophthalmic surgery under Michael Lamensdorf, M.D., P.A., a Florida professional association (the "Practice").

20.    Defendants Zolla and Hirsch are shareholders and principals in a Massachusetts corporation named Ophnet, Inc ("Ophnet").

21.    Zolla and Hirsch marketed Ophnet as a management and marketing company whose principals (Zolla and Hirsch) allegedly have 20 years of experience managing and marketing ophthalmology practices.

22.    Encouraged and induced by Ophnet's marketing scheme, Dr. Lamensdorf hired Ophnet in 1995 to provide marketing and management services to the Practice and as a result, the parties entered into a Management Agreement entitled Management Agreement, Michael Lamensdorf, M.D. (the "Management Agreement").

23.    Subsequently, in 1998, the Lamensdorfs, Zolla, and Hirsch agreed to build an ambulatory eye surgery center in Sarasota, Florida and formed ZHL, a closely held Massachusetts corporation, to perform such function.

24.    To induce the Lamensdorfs to become investors and shareholders in ZHL, Defendants Zolla and Hirsch assured the Lamensdorfs that they were experienced with the construction and operation of ambulatory service centers, that they were licensed attorneys who could handle the majority of legal issues faced by such a surgery center, that Dr. Lamensdorf's involvement in the center would be limited to performing surgeries and providing ophthalmic services for patients at the center, that Ophnet was experienced in managing surgery centers, and that if Dr. Lamensdorf did not like Ophnet's management of the surgery center he could object and a new management company would be hired.

25.    Based on these representations, the Lamensdorfs agreed to invest in and become shareholders of ZHL.

26.    As a result, the Lamensdorfs, Zolla, and Hirsch, formed ZHL and executed a Shareholders' Agreement which memorialized the terms of ownership of ZHL. A true and correct copy of the Shareholders' Agreement is attached hereto as Exhibit "A".

27.    On the basis of Ophnet's alleged experience in the construction and operation of ambulatory surgery centers, ZHL contracted with Ophnet and as a result, the parties entered into the Management Agreement for ZHL Incorporated Ambulatory Surgery Center Project (the "ZHL Management Agreement").

28.    Pursuant to the ZHL Management Agreement, Ophnet was to perform management services for the Ambulatory Surgery Center (LESC) throughout the construction process and thereafter.

29.    During the construction of the Ambulatory Surgery Center, Ophnet provided insufficient management, and inspection and licensing oversight, thereby delaying the opening of the center for approximately six weeks and significantly increasing the costs of construction.

30.    The Ambulatory Surgery Center finally opened for business on November 27, 2001, as the Walter P. Lantz Outpatient Surgery Center, or the LESC, as previously identified.

Ophnet's Mismanagement of the LESC and the Subsequent Litigation

31.    In violation of the ZHL Management Agreement, Ophnet grossly mismanaged the LESC.

32.    Despite Ophnet's mismanagement of the LESC, Zolla and Hirsch failed to take any affirmative action on behalf of ZHL to protect its interests or that of its shareholders.

33.    To the contrary, since Zolla and Hirsch were the sole shareholders and principals in Ophnet, they stood to benefit by Ophnet's continued management, or mismanagement of the LESC, and took no action to ensure Ophnet's compliance with the terms of the ZHL Management Agreement.

34.    Ophnet failed to perform its obligations at the LESC and constructively terminated its relationship with the LESC pursuant to the terms of the ZHL Management Agreement. Due to Ophnet's failure to perform its management responsibilities and obligations under the agreement, the Lamensdorfs were compelled to assume all management responsibilities for the LESC and subsequently Dr. Lamensdorf notified Ophnet of same by letter dated February 15, 2002.

35.    Following Ophnet's constructive termination as the management company of the LESC, Ophnet's Vice President, Zolla, directed correspondence to the attention of Dr. Lamensdorf indicating that effective February 15, 2002, Ophnet ended its performance of management services to Michael Lamensdorf M.D. and Michael Lamensdorf M.D., P.A. A copy of the correspondence is attached hereto as Exhibit "B".

36.    The notice delivered to Dr. Lamensdorf was printed on Ophnet letterhead from its principal office located at 17 Hawkes Street, Marblehead, MA 01945.

37.    At the same time, fellow Ophnet principal, Hirsch, acting on behalf of ZHL, directed correspondence to Dr. Lamensdorf and advised Dr. Lamensdorf to accept the communication as a formal letter from Hirsch as "President of ZHL, Inc." A copy of the correspondence is attached hereto as Exhibit "C".

38.    In his correspondence to Dr. Lamensdorf, Hirsch advised Dr. Lamensdorf that all LESC shareholder and contractual communications should be directed to Hirsch.

39.    The communication delivered to Dr. Lamensdorf by Hirsch was prepared on ZHL

letterhead from its principal office located at 17 Hawkes Street, Marblehead, MA 01945. Hirsch

delivered a copy of the correspondence to Zolla as Vice President of ZHL, Inc. Interestingly,

Zolla and Hirsch were operating both Ophnet and ZHL out of the same office yet purported to

represent the individual interests of the separate entities.

40.    In response to the constructive termination of Ophnet as the management

company for the LESC, Ophnet, Zolla and Hirsch brought suit against the Lamensdorfs and the

Practice in state court in the Commonwealth of Massachusetts.

41.    Ophnet, Zolla and Hirsch named Dr. and Mrs. Lamensdorf and Michael

Lamensdorf, M.D., P.A. as the defendants to the action.

42.    Subsequently, on or about March 20, 2002, Ophnet, Zolla and Hirsch amended

their state court complaint in the Commonwealth of Massachusetts to add Kenneth Cram

("Cram") as a party plaintiff to the action.

43.    Cram is a friend and long time colleague of Zolla and Hirsch who was hired by

Zolla and Hirsch in 1985 to serve as a consultant for ophthalmology practices despite his lack of

experience in that field.

44.    Prior to his employment with Zolla and Hirsch, Cram never received any formal

education geared toward the management of ophthalmology practices.

45.    By his own admission, Cram never took any seminars or courses in management

of medical practices prior to his employment with Zolla and Hirsch.

46    Further, Cram never received any practice management training other than

instruction from Zolla and Hirsch, the principals of both Ophnet and ZHL.

47.    Despite Cram's lack of formal practice management training, Ophnet engaged the services of Cram as a practice management consultant at the LESC.

48.    While clearly unable to manage the ophthalmology practice at the LESC which consequently resulted in the constructive termination of Ophnet's relationship with the LESC, Ophnet nonetheless filed the amended complaint in the state court in the Commonwealth of Massachusetts along with co-plaintiffs Zolla, Hirsch and Cram.

49.    The complaint and the amended complaint were filed by J. Owen Todd and Edward Foye of the law firm of Todd & Weld in Boston. MA, counsel for Ophnet, Zolla, Hirsch and Cram.

50.    As Mssrs. Todd and Foye filed the amended complaint alleging ten (10) counts against the above named defendants, Mr. Foye was simultaneously working to organize a Board of Directors Meeting for ZHL, Inc.

51.    By letter dated March 19, 2002, Mr. Foye notified the undersigned counsel to Dr. and Mrs. Lamensdorf, that he was requesting dates wherein Dr. Lamensdorf would be available for a meeting of the board of directors of ZHL. A copy of the correspondence is attached hereto as Exhibit "D".

52.    In his letter to the undersigned counsel, Mr. Foye indicated that if "Dr. Lamensdorf wishes to participate [in the Board of Directors Meeting] either in person or by conference call, he may inform Mr. Hirsch directly or [the undersigned counsel] may inform [Mr. Foye] of an acceptable time, and we will arrange to place a call to him." Mr. Foye further stated that "unless Dr. Lamensdorf expresses a willingness to attend in person, the meeting will be held telephonically and if we do not hear from [Dr. Lamensdorf] we will assume that he does not wish to participate."

53.    In addition to the foregoing, Mr. Foye prepared an agenda for the Board of Directors Meeting of ZHL and attached a copy of the agenda to the above mentioned correspondence. Mr. Foye also indicated that if Dr. Lamensdorf wished to add any items to the agenda, that same should be sent to either Mr. Foye or Mr. Hirsch.

54.    The actions of Mr. Foye identified in the preceding paragraphs represent affirmative steps taken on behalf of ZHL to organize a meeting of its board of directors.

55.    Subsequent to Mr. Foye's attempts in his apparent role as counsel to ZHL to organize a meeting of the board of directors of ZHL, the named defendants in the state court proceeding in the Commonwealth of Massachusetts exercised their right to remove the action to the Federal District Court in and for the State of Massachusetts pursuant to 28 U.S.C. § 1441(b).

56.    The basis for the removal of the action to the Federal District Court in Massachusetts was grounded upon the fact that the plaintiffs were all residents of the state of Massachusetts and that the defendants were all residents of the State of Florida; thus there existed a complete diversity of citizenship.

57.    Furthermore, the amount in controversy in the dispute exceeded the sum of Seventy Five Thousand Dollars ($75,000.00).

58.    Thus, the defendants removed the action to the Federal District Court on or about March 27, 2002.

59.    Realizing that they could no longer pursue their claims against the defendants in the state court in the Commonwealth of Massachusetts, the plaintiffs filed a motion to amend their complaint and attached a second amended complaint to their motion which named ZHL, a Massachusetts corporation, as a party defendant to the action.

60.     The naming of ZHL as a party defendant to the action was a transparent attempt to defeat diversity of citizenship and thus have the action remanded to state court so that the plaintiffs would not have to pursue their action before the Federal District Court in Massachusetts.

61.     The sole claim brought against ZHL in the second amended complaint which was remanded to the state court, is a claim brought by Ophnet against ZHL for breach of the ZHL Management Agreement.

62.     Presumably, since corporations can only act through their officers and agents, Zolla and Hirsch elected to have Ophnet pursue the claim against ZHL and thus instructed their counsel, Mr. Todd and Mr. Foye, to amend their amended complaint.

63.     Interestingly, Zolla and Hirsch decided to sue ZHL, an entity for which they are vice president and president, respectively.

64.     While Zolla and Hirsch brought a claim on behalf of Ophnet and against ZHL, an entity to which they owe a fiduciary duty, said claim was frivolous since by his own contention, Hirsch "instructed [Cram] to continue his performance as required under the management agreement between ZHL, Inc. and Ophnet, Inc."

65.     As such, since ZHL's President instructed Cram to continue acting on behalf of Ophnet to provide management consulting services to ZHL, ZHL presumably could not have been in breach of the management agreement.

66.     Nevertheless, at some point, Ophnet decided to cease performing management services and notified Dr. Lamensdorf of said decision as noted in the attached Exhibit "B".

67.     Curiously, the notification by Ophnet's President, Zolla, to Dr. Lamensdorf, was sent to Dr. Lamensdorf within days of Hirsch's, as acting President of ZHL, correspondence

delivered to Dr. Lamensdorf wherein Hirsch informed Dr. Lamensdorf that he instructed Cram and Ophnet to continue performing services for ZHL.

68.     In a disturbing sequence of events, Mr. Foye proceeded to file the second amended complaint and brought the action against ZHL, despite his obvious conflict of interest wherein he was acting as counsel to ZHL during the litigation some one month prior when he took affirmative steps to organize a meeting of the board of directors of ZHL.

69.     The agenda for the meeting of the board of directors prepared by Mr. Foye, even provides for the transitioning of operational phase management responsibilities of ZHL.

70.     Despite his obvious involvement in the management of ZHL, Mr. Foye nevertheless sued ZHL simply to attempt to defeat diversity of citizenship in the federal court action in Massachusetts.

71.     In addition, after Mr. Foye's service of the second amended complaint on ZHL, ZHL's president and vice president, Hirsch and Zolla respectively, failed to take any action to protect the interests of ZHL or its shareholders.

72.     While Zolla and Hirsch owe/owed a fiduciary duty to ZHL to protect its interests, Zolla and Hirsch sat idle as the time passed for ZHL's response to the second amended complaint brought by their company Ophnet.

73.     To date, Zolla and Hirsch failed to take any action on behalf of ZHL, as its vice president and president, and failed to engage counsel to respond to same or file any responsive pleading.

74.     The actions or inactions of Zolla and Hirsch are injurious in nature to ZHL and its shareholders since Zolla and Hirsch have subjected ZHL to a default against it in the state court proceeding in the Commonwealth of Massachusetts.

75.    While Hirsch previously notified Dr. Lamensdorf, as detailed in Exhibit "C", that all communications regarding ZHL shareholder or contractual issues should be directed to him, Hirsch neglected the contractual issue raised by Ophnet in the second amended complaint and dealt with the issue by ignoring same and failing to respond to the pleading.

76.    Similarly, Zolla, also aware of the cause of action initiated against ZHL, failed to take any action to serve the best interests of ZHL and its shareholders and ignored the second amended complaint by not engaging counsel or responding to same by filing any responsive pleading.

77.    Clearly, Zolla and Hirsch are more concerned with their own self interests then those of ZHL, for which they serve/served as vice president and president, and its shareholders, to whom they owe a fiduciary duty.

78.    Nevertheless, the second amended complaint brought against the Lamensdorfs, the Practice, and ZHL, by Ophnet, Zolla, Hirsch, and Cram, is an attempt to create liability where none exists, especially when Ophnet's multiple breaches of the ZHL Management Agreement led to its constructive termination for cause as the management company for the Practice.

79.    Specifically, Ophnet breached the ZHL Management Agreement by, without exclusion:

> (a) failing to provide proper oversight during the inspection process, thereby delaying the opening of the LESC;
>
> (b) failing to provide staff of suitable qualifications and abilities;

(c) failing to schedule staff in a cost-effective and efficient manner, thereby forcing Dr. Lamensdorf to schedule employees of his Practice to work at the LESC;

(d) failing to provide proper staff and equipment for sterilization and post-operative care;

(e) failing to follow ACHA guidelines;

(f) failing to provide a functioning and efficient system for billing procedures;

(g) failing to provide adequate anesthesia support for Dr. Lamensdorf;

(h) failing to collect accounts receivable in a timely fashion;

(i) failing to pay accounts receivable in a timely fashion;

(j) failing to develop a marketing schedule or engage in suitably proactive marketing activities;

(k) failing to provide suitable surgical equipment; and

(l) failing to provide cleaning services and pest control services for the LESC.

80.     Defendants Zolla and Hirsch, as well as Ophnet, further breached the Management Agreement, Michael Lamensdorf, M.D., P.A. by, without limitation:

(a) failing to follow through on clinical staff monitoring, staffing, and training;

(b) failing to manage the LASIK service and follow through on LASIK marketing strategies;

(c) effectively abandoning management of the Practice;

(d) ignoring their management responsibilities to the Englewood office in order to, on information and belief, protect Ophnet's competing interest in a Port Charlotte ophthalmology office;

(e) failing to develop another satellite office, as promised;

(f) failing to obtain an insurance provider for all doctors at the practice, and failing to provide staffing and scheduling oversight for all doctors at the practice;

(g) failing to manage doctors' patients' services;

(h) failing to provide proper oversight over the purchase of a new computer system, installation thereof, and software and hardware training thereon; and

(i) failing to successfully manage the Health On Site program.

81.     In addition, as fellow shareholders of ZHL, a closely held corporation, Zolla and

Hirsch owe/owed a fiduciary duty to the Lamensdorfs.

82.     Nevertheless, Zolla and Hirsch breached their fiduciary duty to the Lamensdorfs

by, without limitation:

(a) grossly misrepresenting the amount of money that would be required to construct the LESC;

(b) conspiring in bad faith to dilute and, ultimately, diluting Dr. Lamensdorf's and Mrs. Lamensdorf's ownership interest in ZHL in order to improperly gain control over ZHL;

(c) refusing to disclose the financial records of ZHL and the LESC to Dr. and Mrs. Lamensdorf despite their numerous requests;

(d) refusing in bad faith to pay Dr. Lamensdorf and Mrs. Lamensdorf the distributions due to them;

(e) engaging in self-dealing by, without limitation, failing to act in the best interests of ZHL and other shareholders by refraining from terminating Ophnet as soon as they became aware of Ophnet's inability to manage the LESC in a profitable, efficient, and safe manner;

(f) authorizing an unfounded lawsuit against ZHL by Ophnet simply to defeat diversity of citizenship in federal court and promote the self interests of Zolla and Hirsch; and

(g) failing to engage counsel to respond to the second amended complaint on behalf of ZHL.

83.     As a result, the Lamensdorfs and the Practice countersued Zolla, Hirsch and

Ophnet in the state court in the Commonwealth of Massachusetts for the aforementioned

breaches and further sought relief against Zolla and Hirsch for fraudulent inducement, negligent misrepresentation and an accounting.

84.    At the same time, ZHL, Zolla and Hirsch continue to engage in additional dealings to the detriment of the Lamensdorfs.

85.    Upon information and belief, ZHL, through its majority shareholders, Zolla and Hirsch, has engaged in discussions and has taken affirmative steps with GSP for the sale and purchase of the LESC, which is located in Sarasota County.

86.    ZHL, through its majority shareholders, Zolla and Hirsch, executed a Letter of Intent for the sale of the LESC to GSP and are expected to close the transaction within ninety (90) days.

87    ZHL, Zolla and Hirsch failed to make any disclosure to the Lamensdorf's about the pending transaction.

88.    The real property known as LESC is an asset of ZHL and is located within the jurisdiction of this court.

89.    ZHL, through its majority shareholders, Zolla and Hirsch, is not representing the best interests of the ZHL minority shareholders due to Zolla and Hirsch's ongoing litigation with the Lamensdorfs and the Practice.

90.    As shareholders in ZHL, the Lamensdorfs have a protectable interest in the property known as the LESC.

91.    ZHL's attempts, through its majority shareholders, Zolla and Hirsch, to sell the property known as the LESC and affect the title to that property, will detriment the interests of the Lamensdorfs.

92.   Furthermore, there is no assurance that Zolla and Hirsch will act in the best interests of ZHL or its shareholders, since Zolla and Hirsch authorized Ophnet to bring an unfounded cause of action against ZHL simply to defeat diversity of citizenship in the pending litigation in the state of Massachusetts.

93.   Payments from GSP for the purchase of the LESC cannot be distributed to individuals engaged in inappropriate self dealings and who act in their own self interests and to the detriment of ZHL and its minority shareholders since there is no safeguard against the misappropriation of such funds other than the relief sought herein.

94.   Despite the ongoing litigation in the state court of the Commonwealth of Massachusetts, this Court has jurisdiction to entertain this suit since the property sought to be protected is located in Sarasota County, Florida.

95.   Further, the state court in the Commonwealth of Massachusetts is without jurisdiction to render a decree affecting realty in this state since such a decree would be an *in rem* judgment not entitled to full faith and credit pursuant to applicable law.

## COUNT I – INJUNCTIVE RELIEF
### (as to Defendants ZHL, Zolla, Hirsch, and Global Surgical Partners, Inc.)

96.   Plaintiffs incorporate by reference the allegations of paragraphs 1-95 as if fully set forth herein.

97.   Plaintiffs are entitled to injunctive relief.

98.   Plaintiffs are entitled to have Defendants enjoined from taking any action that would affect title to the property known as the LESC until such time as the pending state court proceeding in the Commonwealth of Massachusetts is resolved.

99.   Defendants' actions in affecting title to the property will likely result in irreparable harm to the Plaintiffs.

100.    There is no adequate remedy at law available to the Plaintiffs for the actions of the Defendants regarding the title to the property known as the LESC.

101.    The Plaintiffs have a substantial likelihood of success on the merits.

102.    The consideration of the public interest favors the issuance of an injunction pending the resolution of the pending state court proceeding in the Commonwealth of Massachusetts.

WHEREFORE, Plaintiffs respectfully request this Court enter an Order enjoining the Defendants from taking any action that would affect title to the property known as the LESC until such time that the state court proceeding in the Commonwealth of Massachusetts is resolved.

## COUNT II – APPOINTMENT OF A RECEIVER
### (as to Defendants ZHL, Zolla and Hirsch)

103.    Plaintiffs incorporate by reference the allegations of paragraphs 1-95 as if fully set forth herein.

104.    Plaintiffs are shareholders in ZHL, which is the legal owner of the subject property which is known as the LESC.

105.    Defendant, ZHL, through its majority shareholders, Zolla and Hirsch, has taken steps toward entering into a contract for the sale and purchase of the LESC property.

106.    Due to the ongoing litigation and dispute between the parties to this action, ZHL, through its majority shareholders, Zolla and Hirsch, is not protecting the interests of the shareholders of ZHL, but rather is engaging in acts to benefit the self interests of Zolla and Hirsch and the Defendants, ZHL, Zolla and Hirsch, are encumbering the rights and interests of the Plaintiffs herein; the Lamensdorfs

107.    The actions of ZHL, Zolla and Hirsch are affecting the value of the subject property known as the LESC.

108.    The appointment of a receiver will preserve the value of the subject property until such time as a resolution is had in the ongoing state litigation in the Commonwealth of Massachusetts.

WHEREFORE, Plaintiffs respectfully request that this Court appoint a receiver to oversee the subject property and preserve its value pending a resolution of the state court litigation in the Commonwealth of Massachusetts.

## COUNT III – IMPOSITION OF A CONSTRUCTIVE TRUST
### (as to Defendants ZHL, Zolla and Hirsch)

109.    Plaintiffs incorporate by reference the allegations of paragraphs 1-95 as if fully set forth herein.

110.    Defendant ZHL, through its agents and majority shareholders, Zolla and Hirsch, has entered into an agreement for the purchase and sale of the LESC to GSP.

111.    Upon information and belief, and as part of the transaction with GSP for the sale and purchase of the LESC, ZHL has/will receive funds from GSP.

112.    ZHL, Zolla and Hirsch made a promise, express and implied, that they would serve the best interests of the corporation and its shareholders.

113.    ZHL, Zolla and Hirsch have/had a fiduciary relationship to the ZHL shareholders.

114.    A relation of trust and confidence existed between the shareholders of ZHL and ZHL, such that a fiduciary relationship was imposed between the parties to this litigation.

115.    Further, a confidential relationship existed between Zolla, Hirsch, the Lamensdorfs, and ZHL.

116.    ZHL, Zolla and Hirsch breached their fiduciary duties to the Lamensdorfs and have been unjustly enriched as a result.

117.    The Lamensdorfs are entitled to the imposition of a constructive trust on any funds received by ZHL, Zolla and Hirsch from GSP.

WHEREFORE, Plaintiffs respectfully request this Court impose a constructive trust on any funds received by Defendants ZHL, Zolla and Hirsch as same relate to the sale of the LESC to Global Surgical Partners, Inc.

Dated:  March 28 , 2005

ABEL, BAND, RUSSELL, COLLIER,
PITCHFORD & GORDON, CHARTERED
Post Office Box 49948
Sarasota, Florida 34230-6948
(941) 366-6660
(941) 366-3999 (fax)
Attorney for Plaintiffs

By: _____
        Michael S. Taaffe
        Florida Bar No. 490318
        Joseph A. Tsombanidis
        Florida Bar No. 196215