UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN A. HIRSCH AND RONALD W. ZOLLA, Individually and as officers, directors, and shareholders of ZHL, Inc. and ZHL, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL LAMENSDORF and KATHY LAMENSDORF, Individually and as shareholders of ZHL, INC.,<br><br>Defendants. | Civil Action<br>No. 05-10902-DPW |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM IN
SUPPORT OF THEIR (i) MOTION TO REMAND AND (ii)
MOTION FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1446**

The plaintiffs John A. Hirsch ("Mr. Hirsch"), Ronald W. Zolla ("Mr. Zolla") and ZHL, Inc. ("ZHL") have moved pursuant to 28 U.S.C. § 1447(c) to remand this case to the state court for lack of diversity. As described in the Affidavit of John A. Hirsch, submitted concurrently herewith, the plaintiff ZHL is a Massachusetts corporation with a principal place of business in Florida. It is therefore non-diverse as to both Dr. Michael Lamensdorf and his wife Kathy ("the Lamensdorfs"), who are Florida residents. Accordingly, this Court has no jurisdiction under 28 U.S.C. § 1332, and this matter must be remanded to the Superior Court for Essex County.

The plaintiffs have also moved for their attorneys' fees pursuant to § 1447(c). It was or should have been crystal clear to the defendants from the outset that removal

would be improper. Although bad faith is not by any means a prerequisite for an award of attorneys' fees, the Lamensdorfs have also demonstrated bad faith in their filings. As shareholders in ZHL, the Lamensdorfs were entirely aware that ZHL's principal place of business is in Florida. Indeed, the Lamensdorfs filed a state court action which acknowledges that ZHL's sole asset is an ambulatory care center ("ASC") located in Sarasota, Florida. Lack of diversity therefore was, or should have been, clear to the Lamensdorfs.

Moreover, the Lamensdorfs' method of dealing with ZHL's undeniable presence in the lawsuit is simply to ignore it. They do not mention ZHL in their Notice of Removal, do not mention ZHL in the memorandum they filed supporting removal, and ZHL does not even appear in the court caption of its pleadings. Such an affirmative attempt to mislead this Court about the parties to the case before it would probably be sanctionable under Fed. R. Civ. P. 11 and certainly meets the far more relaxed standard of § 1447(c). Accordingly, this case should be remanded and attorneys' fees granted.

### i. Prior Proceedings

On December 16, 2004, Mr. Hirsch and Mr. Zolla filed their "Complaint for Declaratory Judgment" in the Superior Court for Essex County. See Complaint for Declaratory Judgment at 1 (date stamp of 12/16/04).[1] The Complaint alleged that Mr. Hirsch and Mr. Zolla are management consultants who for over twenty (20) years have specialized exclusively in the management of ophthalmology practices. Complaint at ¶ 7. Through Ophnet, Inc. ("Ophnet"), a company which they own and operate, they have worked for ophthalmology practices throughout the country. Complaint at ¶ 7.

---

[1] The defendants have filed with this Court certified copies of all pleadings in the state court action and the plaintiffs will therefore cite freely to them.

2

In 1995, Ophnet entered into a contract with Dr. Lamensdorf and his medical practice. Id. at ¶ 8. As a result of significant growth in the number of patients that the practice saw and the number of surgeries that the practice performed, the parties jointly determined that the practice's surgical volume could support an ambulatory surgery center ("ASC"). Complaint at ¶ 9. Thereafter, the parties formed ZHL, a Massachusetts corporation, to build an ASC in Sarasota. Id. at ¶¶ 9-11.

As a result of unrelated business conflicts with Mr. Hirsch and Mr. Zolla, Dr. Lamensdorf subsequently pulled his cases from the ASC. Id. at ¶ 12. As a result, the ASC has not turned a profit and indeed has required steady loans from Mr. Hirsch and Mr. Zolla in order to keep the Florida facility operating and accredited. Id. at ¶ 14. In July 2002, ZHL's shareholders voted to authorize the issuance of additional treasury shares, and it sold them to Mr. Hirsch and Mr. Zolla in return for the forgiveness of loans then outstanding. Id. at ¶ 15. Dr. Lamensdorf and Mrs. Lamensdorf were given the opportunity to purchase treasury stock at the same price at which ZHL was selling that stock to Mr. Hirsch and Mr. Zolla. The Lamensdorfs refused. Id. at ¶ 15. Consequently, the Lamensdorfs together now own less than thirteen percent (13%) of all ZHL stock now issued. Id.

The Complaint further recited that Mr. Hirsch and Mr. Zolla have had ongoing discussions with a company based in Florida which seeks to buy the ASC. Id. at ¶ 16. The Lamensdorfs, however, have refused to provide the prospective purchaser with a release of claims – a matter of some importance since Mr. Hirsch on the one hand the

3

Lamensdorfs on the other have been locked in litigation in the Massachusetts Superior Court since February 2002.[2]  See id. at ¶¶ 14, 17-18.

Count I asked the Court to determine that an actual controversy exists and that ZHL's intent to sell a substantial portion of its assets, when formally voted upon by its Board of Directors and ratified by an appropriate vote of its shareholders, will be binding and effective.  Id. at ¶ 19.  Count II requested a determination that ZHL's intent to pay its currently outstanding debts (including shareholder loans) following the sale of the ASC is a reasonable exercise of business judgment.  Id. at ¶ 20.  Count III asks whether ZHL must make a liquidating distribution to its shareholders.  Id. at ¶ 21.

For a considerable period of time after the Complaint was filed, it appeared that the proposed transaction would not go forward.  See "Verified Motion to Vacate Dismissal for Failing to Effect Process (Memorandum Incorporated)," April 15, 2005 at ¶ 2.  On April 6, 2005, Mr. Hirsch and Mr. Zolla amended their Complaint as a matter of right, since no answer had yet been filed.  Id. at ¶ 3.  The Court subsequently acknowledged its receipt of this Amended Complaint by date stamping it April 7, 2005, at which time the Amended Complaint was served upon the defendants.  Id. at ¶¶ 3-4 and Exs. B and C. thereto.  One day after the Amended Complaint was accepted for filing, the Superior Court, in an evident clerical error, dismissed the action for failure to make service of process within 90 days.  Id. at ¶ 6.  Thereafter, on Mr. Hirsch and Mr. Zolla's motion, the Massachusetts Superior Court nunc pro tunc vacated that dismissal.  See Clerk's Notice dated April 20, 2005.

---

[2] That litigation is now in this Court as a result of an untimely and otherwise improper Notice of Removal which the Lamensdorfs filed.  The plaintiffs intend to move for remand of that case shortly as well.

4

The Amended Complaint served on the Lamensdorfs was the <u>only</u> complaint served on the Lamensdorfs, and it clearly lists ZHL as a party plaintiff. See Amended Complaint at ¶ 4.

On May 2, 2005, the Lamensdorfs filed a Notice of Removal with the Essex Superior Court.

### ii. Argument

**I.    COMPLETE DIVERSITY DOES NOT EXIST AMONG THE PARTIES TO THIS LAWSUIT, AND IT MUST BE REMANDED**

In the context for a petition for removal, whether diversity exists is measured at the time the removal notice is filed. <u>Pullman v. Jenkins</u>, 305 U.S. 534, 537 (1939); <u>Littlefield v. Continental Cas. Co.</u>, 475 F. Supp. 887, 889 (C. D. Cal. 1979). The presence of a non-diverse party automatically destroys the federal court's original diversity jurisdiction under 28 U.S.C. § 1332; no party need assert such a jurisdictional defect, no party can waive such a defect or consent to jurisdiction, and no court can ignore such a defect. <u>Wisconsin Dep't of Corrections v. Schacht</u>, 524 U.S. 381, 389 (1998). In evaluating whether diversity exists, affidavits and other matters outside the pleadings may be consulted. <u>Littlefield</u>, 475 F. Supp. at 889; <u>Mills v. Allegiance Healthcare Corp.</u>, 178 F. Supp. 2d 1, 4-5 (D. Mass. 2001). If challenged, federal jurisdiction is presumed to be lacking until established otherwise, <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994), and all doubts are resolved in favor of remand. <u>In re Mass. Diet Drug Litig.</u>, 388 F. Supp. 2d 198, 202 (D. Mass. 2004).

For purposes of determining whether diversity of citizenship exists, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

5

The burden of proving a corporation's principal place of business rests upon the party asserting diversity. Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F. 2d 1228, 1236 (1st Cir. 1991).

The First Circuit uses one of three complimentary tests in order to establish diversity, but it is "important to bear in mind that these three tests are really models of corporate structure." Rautenstrauch v. Stern/Leach Co., 2004 U.S. Dist. LEXIS 140 at *6 (Jan. 8, 2004). "The 'center of corporate activity' model is appropriate for a corporation where day-to-day management is concentrated in one location; the 'locus of operations' model is appropriate for a corporation having physical operations, a majority of which take place in one state; and the 'nerve center' model is appropriate for a corporation where executives at one central office direct all corporate activities conducted in diverse jurisdictions." Id. at *6-*7.

Here, the most appropriate test is the locus of operations model. See Topp v. CompAir Inc., 814 F. 2d 830, 835 (1st Cir. 1987); deWalker v. Pueblo Int'l, Inc., 569 F. 2d 1169, 1172-73 (1st Cir. 1978). Under that test, the principal place of business is "where the bulk of the corporation's actual physical operations are located." Topp, 814 F. 2d at 834. The only physical operations which ZHL has relate to the ASC which it owns in Sarasota, Florida. Hirsch Aff. at ¶ 4. ZHL has no asset of significance other than the ASC. Id. At all times, all of ZHL's revenue generating activities occurred in Florida. Id. at ¶ 7. All of ZHL's paid employees (at its busiest, it had in the vicinity 10-12 full and part-time workers) are situated in Florida. Id. at ¶¶ 7-10. All of the surgeries which generated ZHL's revenues took place in Florida, and all payments from third parties initially went to ZHL's Florida bank account. Id. at ¶ 9. Although no doctors

6

currently perform surgery at the ASC on a regular basis, ZHL had a full-time employee who worked in Sarasota up until a few weeks ago, and continues to have one part-time employee who works there. That is its only employee. Hirsch Aff. at ¶ 10. Thus, there can be no question that the bulk of the corporation's physical activities are located in Florida, and that for diversity purposes its principal place of business is there as well.

The same results would obtain under the center of corporate activity test. Under that test, the question is "where the corporation's day-to-day management takes place." deWalker, 569 F. 2d at 1172. Although this test yields results that in this case are somewhat less clear than the locus of operations test, not all of ZHL's business activities were directed from its corporate offices in Massachusetts. When surgery is performed at the ASC, clinical supervision of the facility is in the hands of ZHL's medical director or the surgeon who was performing the surgery, as appropriate. Hirsch Aff. at ¶ 9. Those individuals have without exception been Florida physicians. Id. Compliance meetings required by various private and governmental entities that accredit and certify the ASC are held in Florida. Id. at ¶ 10. As previously noted, day-to-day business management (as opposed to executive decision making) is in the hands of the corporation's only employee, who is situated in Sarasota. Accordingly, under the center of activity test as well the corporation's principal place of business is Florida.

Under the nerve center test, it is more likely that Massachusetts would be deemed the corporation's principal place of business; that is where executive decisions are made, and where many of the corporation's books and records are kept. See Amended Complaint at ¶ 4. Even here, however, the test does not weigh heavily in Massachusetts' favor, since clinical decision making (clearly an important factor in a surgery center)

7

always rested with Florida physicians. Hirsch Aff. at ¶ 9. Furthermore, management activity undertaken by Ophnet cannot reasonably be attributed to ZHL; corporations and their subsidiaries are to be considered separately for purposes of establishing diversity, and that rule clearly has still greater force where two corporations not under common ownership sign a contract whereby one provides management services to the other. See deWalker, 569 F. 2d at 1170-73; AAMAX Corp. v. New England Tel. & Tel. Co., 62 F. Supp. 2d 327, 329-330 (D. Mass. 1999). See also Hirsch Aff. at Ex. A. Moreover, ZHL is hardly the sort of corporation for which the nerve center test is appropriate, insofar as it is lacking "complex and far flung activities." Topp, 814 F. 2d at 834. Rather, it has only one physical place of activity to speak of, and that is the surgery center in Sarasota. Therefore, the nerve center test by itself will not provide that Massachusetts is the corporation's principal place of business.

In summary, ZHL's business activities are, for the limited purposes of § 1332, centered in Florida. It is therefore non-diverse as to the Lamensdorfs, and the case must therefore be remanded to state court for lack of subject matter jurisdiction.

## II. THE COURT SHOULD AWARD ATTORNEYS' FEES UNDER 28 U.S.C. § 1447

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." The provision does not require bad faith or frivolousness on the part of the removing party, and has been interpreted as providing a great deal of discretion and flexibility to the Court in fashioning remedial awards. See, e.g., Suder v. Blue Circle, Inc., 116 F. 3d 1351, 1352 (10th Cir. 1997); Russell v. Sprint Corp., 264 F. Supp. 2d 955, 963 (D. Kan. 2003); Pran v. Waste Mgmt., Inc., 290 F. Supp. 2d 1286, 1295 (M.D. Fla.

8

2003) (intent of § 1447(c) is to provide reimbursement to plaintiffs who have incurred expense in attacking improper removals). Cf. Gattegno v. Sprint Corp., 290 F. Supp. 2d 372 (D. Mass. 2003) (declining to award attorneys fees where defendant had reasonable basis for removal).

Here, however, there appears little question that attorneys' fees are appropriate under almost any conceivable standard. The Amended Complaint that was served upon the Lamensdorfs explicitly named ZHL as a party plaintiff. See Proofs of Service in the Certified State Court Proceedings filed by the Lamensdorfs, copies of which is attached to the Motion for Attorney's Fees as Exhibit A. Nevertheless, both the Defendants' Notice of Removal and Memorandum of Law in Support of Notice of Removal simply ignore ZHL altogether and do not even list ZHL as a party plaintiff in the caption. The Lamensdorfs so even though they acknowledge that Mr. Hirsch and Mr. Zolla "brought the instant action as majority shareholders of ZHL, Inc., a Massachusetts corporation." "Memorandum of Law in Support of Notice of Removal," May 2, 2005, at 1.

Even if the absence of ZHL from the Lamensdorfs' pleadings could somehow be construed simply as inexcusable sloppiness on the part of their attorneys, it is clear that their attorneys understood no later than May 11, 2005 that ZHL was a party to this action. At that time, the Lamensdorfs, through counsel, filed an Amended Civil Action Cover Sheet listing ZHL as a party. See Motion for Attorney's Fees at Exhibit B. *To this date*, the Lamensdorfs have not amended their Notice of Removal, have not amended their Memorandum of Law in Support of Petition for Removal, and have offered no explanation that the plaintiffs are aware of concerning why they continue to insist that diversity exists. Given the well-understood requirement that the diversity statutes must

be narrowly construed, there does not seem any serious argument on the point.[3] Indeed, the allegations of the Lamensdorfs' "Memorandum of Law in Support of . . . Motion to Dismiss Plaintiffs' Complaint for Declaratory Judgment, or in the Alternative Motion to Stay Action," filed May 9, 2005, makes abundantly clear that the Lamensdorfs <u>know</u> and <u>agree</u> that ZHL's business operations are sufficiently concentrated in Florida that Florida is the appropriate venue for suit.[4] The Lamensdorfs' Florida complaint makes the same point. <u>See</u> Motion for Attorneys' Fees at <u>Exhibit C</u>.

In short, this is not a case calling for restraint in the assessment of costs. The defendants' Memorandum in Support of Removal does not even suggest the existence of a substantial jurisdictional issue: instead, it completely ignores the obvious. Thus, attorneys fees should be granted, and the plaintiffs should be given leave to submit an affidavit detailing those fees and other reasonable costs incurred.

## **CONCLUSION**

For each of the foregoing reasons, the Court should grant the plaintiffs' Motion to Remand and Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c).

---

[3] And if there <u>is</u> a serious argument on the point the Lamensdorfs do not make it; they simply ignore ZHL altogether.

[4] The plaintiffs request only attorneys' fees for themselves and leave the issue of whether there has been a violation of Fed. R. Civ. P. 11 to the Court. <u>See</u> <u>DiCostanzo v. Trymax Corp.</u>, 1988 U.S. LEXIS 17951, *5-*7 (May 18, 1988).

Respectfully submitted,

JOHN A. HIRSCH, RONALD W. ZOLLA, and ZHL, INC.

By their Attorneys,

\_\_\_\_/s/ Edward Foye_____
J. Owen Todd (BBO # 499480)
Edward Foye (BBO #562375)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA  02109
617-720-2626

Dated:  May 23, 2005